# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV 08-8029-GW(JTLx) | Date | April 2, 2009 |
| Title | *Blanca Gurrola, et al. v. Ramona J. Jervis, et al.* | | |

Present: The Honorable   GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez/R. Juarez | Katherine Stride | |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorney Present for Plaintiffs: | Attorney Present for Defendants: |
|---|---|
| Patricia Grace | Jason S. Roberts |

**PROCEEDINGS:** DEFENDANTS' MOTION TO DISMISS AND/OR STRIKE PLAINTIFFS' FIRST AMENDED COMPLAINT AND MOTION FOR A MORE DEFINITE STATEMENT (filed 02/25/09)

Hearing is held. Court and counsel confer regarding supplemental jurisdiction.

For reasons stated on the record, the Court's tentative ruling, circulated in court and attached here, is adopted as the Court's final ruling. Defendants' motion is **granted in part** and **denied in part**.

Plaintiffs are given two weeks leave to amend the complaint.

The Court shall hold a Scheduling Conference on **May 7, 2009 at 8:30 a.m.**

IT IS SO ORDERED.

                                                                                            :    07

                                                              Initials of Preparer    RJ

<u>**Gurrola, et al. v. Jervis, et al.**</u>, Case No. CV-08-8029

Tentative Rulings on Motion to Dismiss and/or Strike Plaintiffs' First Amended Complaint Pursuant to FRCP 12(b)(6) and 12(f) and Motion for a More Definite Statement Pursuant to FRCP 12(e)

## I. Background

Plaintiffs Blanca Gurrola ("Blanca"), Karla Gurrola ("Karla"), Leticia Cerna, Rosales Azucena, Domingo Brassea and the Fair Housing Foundation ("FHF") (collectively "Plaintiffs") filed suit on December 5, 2008, against defendants Ramona J. Jervis, Harold Jervis aka H.Jervis. R. Jervis, Don Jervis, Jr., Jervis Property Services, Inc., and John Doe aka Luis Camilo Sigala aka Luis Zigala ("Sigala). On January 21, 2009, Plaintiffs filed a First Amended Complaint ("FAC"). Plaintiffs allege that the defendants are the owners and/or managers/operators of a multi-family residential property in Cudahy, California ("the Property"). *See* FAC ¶¶ 8-9. FHF is a California non-profit corporation which investigates claims of housing discrimination, whereas the individual plaintiffs are all female tenants of the Property. *See id.* ¶¶ 12-13. Karla is Blanca's 17-year old daughter. *See id.* ¶ 14.

Sigala was allegedly employed by the remaining defendants as the manager of the Property in 2007 and 2008, and lived at the Property as one benefit of his employment. *See id.* ¶¶ 15-16. He allegedly "repeatedly committed lewd acts in the apartment complex" in front of the individual plaintiffs, and other female children, residents and visitors. *See id.* ¶ 18. These acts included exposing his penis, urinating in public, placing his bare bottom on the common area's pool table and yelling for someone to "fuck" him, playing loud music with "foul, lewd lyrics," and making various obscene comments, including comments targeted at or referring to minor female residents of the Property. *See id.* ¶¶ 19, 21-39, 43. Sigala allegedly also invited his male friends and visitors to expose their penises and urinate in public in front of women and girls on the premises of the Property. *See id.* ¶ 20.

Sigala's behavior led several of the plaintiffs and/or their relatives to fear leaving their residence or going near Sigala's unit at the Property, and for their safety. *See id.* ¶¶ 44-46. Sigala's behavior also led to complaints to the other defendants and to some

residents of the Property applying for a sexual harassment and stalking restraining order against Sigala. *See id.* ¶¶ 50-51. In response to the complaints, the other defendants allegedly served the individual plaintiffs with notices to vacate, and ceased performing maintenance and repairs in the apartments of the individual plaintiffs and other complaining residents. *See id.* ¶¶ 65-68. Sigala began to take photographs of the individual plaintiffs (and others who had complained about him), their vehicles and their pets. *See id.* ¶ 69. He also rearranged the Property's parking assignments and issued parking tickets to those who had complained about him. *See id.* ¶ 70. In addition, Defendants notified Blanca and Karla that Karla would no longer be able to maintain her companion/service dog on the Property and the Gurrolas were charged excessive pet deposits. *See id.* ¶¶ 71, 90-94. Finally, the defendants also threatened to circulate letters to other landlords so that nobody would rent to them. *See id.* ¶ 72.

Plaintiffs also complain about habitability problems at the Property, such as: 1) plumbing problems and odors in the Gurrolas' apartment; 2) the illegal conversion of a garage into a dwelling; 3) the general disrepair of the Property while Zigala was manager; 4) the allowance of the occurrence of health hazards on the Property; 5) the allowance of abandoned vehicles on the Property; 6) the absence of a sufficient number of garbage receptacles and Sigala's use of the Property's receptacles for deposit of garbage from his job, leading to an overflow of garbage and attraction of cockroaches, rodents and vermin; 7) the allowance of storage of home appliances in common areas of the Property; 8) the unsafe and damage condition of garages; 9) the allowance of tarps on the outside of individual dwelling units; 10) peeling paint in the bathrooms and kitchens; 11) damaged or missing smoke detectors; 12) the absence of dead-bolt locks on each entry door; 13) the absence of operable window security or locking devices for windows; and 14) a multitude of other various problems. *See id.* ¶¶ 160-173. Plaintiffs allege that public officers or employees responsible for the enforcement of housing laws notified the defendants of their obligations to abate and repair. *See id.* ¶ 180. The Property was cited for city code violations. *See id.* ¶ 181. Nevertheless, some of the habitability problems remain uncorrected. *See id.* ¶ 182.

Plaintiffs allege nineteen causes of action: 1) violation of the Federal Fair Housing Act (sexual harassment/sexual discrimination); 2) violation of the Federal Fair

2

Housing Act (retaliation); 3) violation of the Federal Fair Housing Act (handicap discrimination); 4) conspiracy to violate civil rights; 5) neglect to prevent violation of civil rights; 6) lewd or disorderly conduct; 7) violations of state landlord-tenant laws; 8) habitability; 9) violations of the Unruh Civil Rights Act; 10) violation of Civil Code § 51.5; 11) sexual harassment in violation of Civil Code § 51.9; 12) handicap discrimination in violation of Civil Code § 54.1; 13) violation of California civil rights; 14) discrimination in violation of California's Fair Employment & Housing Act; 15) retaliation in violation of California's Fair Employment & Housing Act; 16) unfair business practice; 17) intentional infliction of emotional distress; 18) negligent infliction of emotional distress; and 19) injunctive relief. The first, second, fourth, fifth, seventh through eleventh, thirteenth through sixteenth and nineteenth claims are brought by all plaintiffs against all defendants. Blanca, Karla and the FHF sue all defendants on the third and twelfth claims. The individual plaintiffs sue all defendants on the sixth claim. The individual plaintiffs sue all individual defendants on the seventeenth and eighteenth claims.

Ramona J. Jervis, Don Jervis, Jr. and Jervis Property Services, Inc. ("Movants")[1] now move to dismiss, strike and/or for a more definite statement.

## II. Analysis

### A. Motion for a More Definite Statement

Under Rule 12(e), "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Fed. R. Civ. P. 12(e). A court may order a more definite statement and "require such detail as is appropriate in the particular case . . . ." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996). A Rule 12(e) motion fails where a complaint is specific enough to apprise the defendant of the substance of the claim being asserted. *See Bureerong v. Uvawas*, 922 F.Supp. 1450, 1461 (C.D. Cal. 1996). Movants' Rule 12(e)

---

[1] The Jervis Defendants indicate that "Harold Jervis (aka H. Jervis, etc.)" is deceased. Plaintiffs note in their Opposition that "Harold Jervis aka H. Jervis, R. Jervis, and John Doe aka Luis Camilo Sigala aka Luis Zigala have not appeared to move or answer."

motion is somewhat hard to fathom, given the length and detail of the Plaintiffs' allegations.

Movants argue that the "fundamental problem" is Plaintiffs' "failure to apprise Defendants of the nature of the liability theories they face in this action." However, the "nature" of Plaintiffs' claims is absolutely clear. It is perhaps true that some of the allegations incorporated by reference into each of the claims do not belong in those particular claims. In addition, there is no doubt some appeal to the view adopted by the Eleventh Circuit in *Anderson v. District Bd. of Trustees*, 77 F.3d 364 (11th Cir. 1996), especially for purposes of expediency: "Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice." *Id.* at 367; *see also* 2 Moore's Federal Practice, § 12.36[1], at 12-95 (Mathew Bender 3d ed.) ("[I]f a complaint approaches the other extreme of being overly prolix or complex, the motion for more definite statement can assist the court in 'the cumbersome task of sifting through myriad claims, many of which may be foreclosed by various defenses.'") (quoting *Anderson*). However, a reading of the FAC *en masse* gives Movants abundant notice of the basic premise of each of the claims alleged. Moreover, the parties will have to engage in discovery and a litigation of the merits of Plaintiffs' case (assuming viable causes of action) whether or not the details thereof are included in the FAC. The Court therefore denies Movants' motion to the extent that they seek to rely upon Fed. R. Civ. P. 12(e), at least insofar as they seek to prevail under that Rule with respect to the FAC as a whole.[2]

B. <u>Motion to Dismiss</u>

Under Rule 12(b)(6), a court must (1) construe the complaint in the light most favorable to the plaintiff, and (2) accept all well-pleaded factual allegations as true, as well as all reasonable inferences to be drawn from them. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). The Court need not

---

[2] Particular claims may be more susceptible to a Rule 12(e) motion, as addressed in the text below.

accept as true "legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003). Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560-63 (2007) (dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief). However, a plaintiff must also "plead 'enough facts to state a claim to relief that is plausible on its face.'" *Johnson*, 534 F.3d at 1122 (quoting *Bell Atlantic*, 550 U.S. at 570).

Prior to ruling on the motion to dismiss, however, the Court considers the issue of supplemental jurisdiction.

### 1. Supplemental Jurisdiction

Movants ask that this Court decline to exercise supplemental jurisdiction over Plaintiffs' state-law claims. They correctly note that the decision whether to exercise supplemental jurisdiction is left to the Court's discretion. They argue that factors counseling for the rejection of exercising supplemental jurisdiction generally can include judicial economy, the interest in avoiding needless decisions on state law, the substantial predomination of the state claims (whether in terms of proof or scope of the issues raised), and the existence of divergent legal theories of relief potentially resulting in jury confusion. *See* 28 U.S.C. § 1367(c); *Executive Software No. Am., Inc. v. United States Dist. Ct. (Page)*, 24 F.3d 1545, 1552-55 (9th Cir. 1994), *overruled on other grounds by Cal. Dep't of Water Resources v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008); *Picard v. Bay Area Regional Transit Dep't*, 823 F.Supp. 1519, 1526-27 (N.D. Cal. 1993). Here, Movants feel that Plaintiffs' theories "raise a host of conflicting issues," thereby threatening jury confusion. While they feel that the theories "are in direct analytical conflict" in certain respects, what they apparently mean is that the claims simply entail different elements. They do not cite to any claims which actually impose directly conflicting elements.

However, Movants do point to conflicting burdens of production and proof on the

issue of their financial worth for purposes of determining a punitive damages award. Though numerous courts have pointed to jury confusion as a basis for declining supplemental jurisdiction, there is apparently a split in authorities as to whether a general concern about jury confusion is a sufficient reason. *See* Schwarzer, Tashima, et al., California Practice Guide: Federal Civil Procedure Before Trial ("Schwarzer & Tashima") (2008) § 1:157.5, at 2B-76. There is, however, one district court which took this approach in declining supplemental jurisdiction where the court felt that conflicting punitive damages standards would have proven difficult to overcome. *See Green v. Zendrian*, 916 F.Supp. 493, 500 (D.Md. 1996) ("Two sets of instructions, describing two different standards for awarding punitive damages, would have given rise to an obvious source of potential confusion for the jury. Such a high likelihood of confusion provided a compelling reason for this Court to decline to exercise jurisdiction over the state claims.").

Movants also argue for a denial of supplemental jurisdiction because Plaintiffs bring thirteen state law claims and five federal claims. The numbers alone, however, are somewhat insignificant, especially where the claims arise from the same common facts. *See LiveOps, Inc. v. Teleo, Inc.*, No. C05-03773 MJJ, 2006 U.S. Dist. LEXIS 2574, *12 (N.D. Cal. Jan. 9, 2006) (citing *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 790 (3d Cir. 1995)); *Housing Rights Center, Inc. v. Moskowitz*, No. CV 04-2266 PA (VBKx), 2004 U.S. Dist. LEXIS 28885, *11-12 (C.D. Cal. Sept. 20, 2004) (citing same authority). *But see Chasan v. The Garrett Group*, No. 06CV1090 WQH (NLS), 2007 U.S. Dist. LEXIS 1511, *18 (S.D. Cal. Jan. 18, 2007) (declining to exercise supplemental jurisdiction where, among other things, plaintiffs alleged that 15 California statutes had been violated). This would appear to be the case with all but potentially one claim – the habitability claim (which itself overlaps somewhat due to the allegations of retaliation).

The decision whether to exercise supplemental jurisdiction here is somewhat of a close call. Plaintiffs do not respond to the supplemental jurisdiction argument or address the issue at all. In that sense, therefore, the Court may consider that they consent to the denial of supplemental jurisdiction. At this point, the Court is inclined to exercise supplemental jurisdiction over the states claims (with the possible exception as to habitability), at least while it has the federal claims before it.

## 2. Standing

Movants correctly point out that the FAC repeatedly references acts directed at individuals who are not parties before the Court.[3] Plaintiffs respond by asserting that harassment of others is <u>relevant</u> to harassment of Plaintiffs. While this may be true and those events are conceivably admissible in this action, the question Movants raise is whether Plaintiffs may recover on behalf of those other individuals or represent their interests in a non-class action. They clearly may not. The FAC must be amended in other respects, as addressed below. In amending the FAC, Plaintiffs should excise references to other alleged injured individuals who are not actual parties in this action.[4]

## 3. Karla

Movants note that Karla is a minor and therefore lacks the capacity to sue in her own name. Plaintiffs assert that this would have only required the amendment of the caption and that, in any event, Karla reached age 18 on March 5, 2009. The first proposition is incorrect as a matter of law, and the second statement is not based on the face of the FAC and may not be considered by the Court in the context of the current motion. The Plaintiffs must amend their Complaint to make clear Karla's age and capacity to sue.

## 4. FHA Claims

With respect to Plaintiffs' first claim for relief, for a sexual harassment-based FHA claim, Movants argue that Sigala's acts were not within the course and scope of his employment, even if it can be assumed that he was their employee. Moreover, they argue that they did not ratify, condone or sanction Sigala's actions. With respect to Movants' argument that there is no allegation that they ratified, condoned or sanctioned Sigala's actions, they apparently overlook the allegation that they retaliated against Plaintiffs in response to Plaintiffs' complaints. Such retaliation can be viewed as ratification.

---

[3] Movants also move to strike this material pursuant to Rule 12(f). That request is moot if the Court grants the motion to dismiss on this basis.

[4] While not specifically addressed by the parties, the Court has a question as to the standing (or rather the apparent lack thereof) as to plaintiff FHF.

7

Plaintiffs contend that conduct under this claim is imputable to a landlord if the landlord knew or should have known of the harassment and took no effective action to correct the situation. *See Williams v. Paretsky Mgmt, Inc.*, 955 F.Supp. 490, 496 (D. Md. 1996). Furthermore, they argue that, under *Williams* and *Beliveau v. Caras*, 873 F.Supp. 1393, 1399 (C.D. Cal. 1995), Sigala's actions need not have been within the scope of his employment for Movants to be liable on their first claim for relief.[5] They also argue that Sigala's status as Movants' employee is ultimately immaterial to this claim, an issue which need not be decided at this time given Plaintiffs' allegations that Sigala was Movants' employee. *See Neudecker v. Boisclair Corp.*, 351 F.3d 361, 365 (8th Cir. 2003).

There is no question that principles of *respondeat superior* apply in the Fair Housing Act context. *See Meyer v. Holley*, 537 U.S. 280, 285-91 (2003). Moreover, at least some courts have concluded that an employer may be liable under the FHA even when the employee's acts are outside the scope of employment, for example where "'the employee was aided in accomplishing the tort by the existence of the agency relation.'" *Glover v. Jones*, 522 F.Supp.2d 496, 507 (W.D.N.Y. 2007) (quoting *Mack v. Otis Elevator Co.*, 326 F.3d 116, 123 (2d Cir. 2003)); *see also Beliveau*, 873 F.Supp. at 1401 n.5. The Court will deny Movants' motion as to Plaintiffs' FHA claims.

### 5. Conspiracy to Violate and Neglect to Prevent Violation of Civil Rights

Movants argue that Plaintiffs have not sufficiently alleged the existence of a conspiracy to violate Plaintiffs' constitutional rights, other than by way of conclusory allegations that they were aware of Sigala's actions and did nothing to prevent it. *See Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1141 (9th Cir. 2000) (setting forth elements for section 1985(3) conspiracy claim). Plaintiffs ignore this portion of the argument with regard to this claim, instead responding to Movants' argument that Plaintiffs have not pled an act or conduct in furtherance of the conspiracy. Plaintiffs' allegation of the existence of a conspiracy to deprive them of equal protection does not pass muster under *Bell Atlantic*. Plaintiffs must provide more in order to make that allegation plausible.

---

[5] As the *Beliveau* court noted, the "scope of employment" determination is not appropriate for resolution at the motion to dismiss stage, as it is highly fact-dependent. *See Beliveau*, 873 F.Supp. at 1399-1401.

8

Accordingly, the Court will dismiss the fourth cause of action with leave to amend.

In addition, Movants argue that there is no cause of action for neglect to prevent violation of civil rights. Plaintiffs cite in response to 42 U.S.C. § 1986. Section 1986 provides for liability for those who "hav[e] knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and [who] hav[e] power to prevent or aid in preventing the commission of the same," and who neglect or refuse to prevent or aid in the prevention. However, as noted above, section 1985 requires a conspiracy. Plaintiffs have not sufficiently alleged the existence of a conspiracy. Therefore, they cannot have sufficiently alleged a violation of section 1986. See *McCalden v. Cal. Library Ass'n*, 955 F.2d 1214, 1223 (9th Cir. 1990), *cert. denied sub nom. Simon Wiesenthal Ctr. for Holocaust Studies v. McCalden*, 504 U.S. 957 (1992). The Court will therefore similarly grant Movants' motion with respect to Plaintiffs' fifth claim for relief, with leave to amend.

### 6. Lewd Acts

The Jervis Defendants argue that they are not mentioned by name in Plaintiffs' sixth claim for relief and that, in any event, Plaintiffs may not recover civilly for violation of a Penal Act provision. See *Agnew v. Parks*, 172 Cal.App.2d 756, 765 (1959) ("[N]o civil right can be predicated upon a mere violation of a criminal statute."). In this claim for relief, Plaintiffs cite to alleged violations of Penal Code sections 314, 316, 647(a) and 647.6. See FAC ¶¶ 134, 138, 140. They have not opposed this portion of Movants' motion and have not provided any authority for inflicting civil liability for violation of these sections of the Penal Code, though, contrary to *Agnew*, California courts have determined that:

> [t]here are at least three different ways alleged violations of criminal law can result in civil actions. First, and perhaps most commonly, violation of a criminal statute can be used to establish a breach of the standard of care or other element of an ordinary tort cause of action. Second,…a criminal statute can expressly or impliedly give rise to a private right of action for its violation. Third, under some circumstances, a governmental or quasi-governmental agency can sue to enjoin further breaches of the statute on a public nuisance or related theory.

*Animal Legal Defense Fund v. Mendes*, 160 Cal.App.4th 136, 141 (2008) (internal

9

citations omitted). The Court will dismiss Plaintiffs' sixth claim for relief with leave to amend. If they amend and they again allege this claim against Movants, the Court expects Plaintiffs to provide direct authority not just allowing for civil liability for violation of these particular provisions of the Penal Code, but that liability may also be assessed vicariously or by way of *respondeat superior*.

### 7. Violation of State Landlord-Tenant Laws

Movants argue that this claim is simply too broad and vague to require an appropriate response. Plaintiffs respond that Movants' contention that there is no California cause of action for "violation of state landlord-tenant laws" is not supported by their citation to any supporting authority, and is therefore to be deemed without foundation. However, Plaintiffs will ultimately have to prove their right to prevail under any claims for relief that they set forth. At this stage, they have to prove their ability to state a cause of action.

Plaintiffs specifically cite California Civil Code sections 1940.2(a)(3)-(4), 1942.5(a) and 1954.[6] Beyond those statutory sections, however, Movants are correct that this claim is simply too vague and indefinite to require a response and would be subject to a Rule 12(e) dismissal. *But see cf. Alvarez v. Hill*, 518 F.3d 1152, 1157-58 (9th Cir. 2008) (stating, in case brought by pro se prison inmate, that "[a] complaint need not identify the statutory or constitutional source of the claim raised in order to survive a motion to dismiss"). If Plaintiffs seek to recover for any "state landlord-tenant laws" other than the sections identified in paragraph 153 (or specifically identified in another cause of action elsewhere in the FAC), they should amend the FAC. Otherwise, the Court will deny the motion as to this claim, but will limit Plaintiffs solely to the statutes cited in the FAC as to this cause of action.

### 8. Habitability

The FAC raises no less than 29 different alleged habitability claims. The habitability problems apparently occurred while Sigala was at the property, but Plaintiffs

---

[6] If Plaintiffs' claim is limited to alleged violations of California Civil Code sections 1940.2(a)(3)-(4), 1942.5(a) and 1954, they should make that clear in an amended pleading.

do not allege that the problems were limited to that timeframe. They also do not plead, other than conclusorily, that Movants' failure to rectify these problems was in retaliation for Plaintiffs' complaints about Sigala. *See* FAC ¶¶ 183, 185-86. If the Court decides to accept supplemental jurisdiction over Plaintiffs' habitability claim, the following analysis applies.

Movants argue that the FAC does not contain allegations that Plaintiffs gave Movants notice of any defective conditions or that Plaintiffs gave them a reasonable amount of time to repair the defects. Plaintiffs respond by asserting that Movants must have known of certain of the conditions, government agencies served them with habitability notices and, even after the original Complaint was filed, the Jervis Defendants still did not fix the alleged problems. Plaintiffs also argue that the Federal Rules do not require that a plaintiff allege all of the elements of a cause of action and that Movants reference elements which are not required under California law. *See Knight v. Hallsthammer*, 29 Cal.3d 46, 54 (1981).

One leading California treatise states that, in a civil action for damages for breach of the implied warranty of habitability, a plaintiff must show the following: 1) that there was a materially defective condition affecting habitability, 2) that the condition was unknown to the tenant at the time of the occupancy, 3) that the effect of the condition on habitability was not apparent on reasonable inspection, 4) that notice was given to the landlord within a reasonable time after the tenant discovered or should have discovered the breach of warranty, and 5) that the landlord was given a reasonable time to correct the defect while the tenant remained in possession. *See* 12 Witkin, Summary of California Law, Real Property § 627, at 734 (citing *Quevedo v. Braga*, 72 Cal.App.3d Supp. 1, 7-8 (1977)). *Knight* suggests that the second, third and fifth of these elements are inappropriate in a case alleging the breach of the warranty of habitability. *See Knight*, 29 Cal.3d at 51-54.[7]

*Knight* was an unlawful detainer action, not an action for damages. Therefore,

---

[7] Given *Knight* and *Quevedo* and Witkin's comments, the uncertainty over the proper elements for a habitability claim would be one more reason to decline to exercise supplemental jurisdiction over this claim. *See* 28 U.S.C. § 1367(c)(1); *see also Keegan v. Kivitz*, No. C 04-04470 SI, 2005 WL 2036919, *10 n.9 (N.D. Cal. Aug. 22, 2005) (expressing uncertainty over *Knight*'s application).

even if a reasonable time to correct is not required under *Knight* in unlawful detainer actions, it is still required in civil actions under *Quevedo*. Moreover, in *Knight* the landlord was aware of the conditions. Given these elements, it would appear that Plaintiffs' claim is deficient with respect to all but the first element. As to the notice element, although Plaintiffs do allege that public officers or employees responsible for the enforcement of housing laws notified Movants of *some* alleged violations, *see* FAC ¶¶ 180-181, they do not specify which of the multitude of alleged violations this notice referenced, nor do they allege that the notification occurred "within a reasonable time after the tenant discovered or should have discovered the breach of warranty." If the Court accepts supplemental jurisdiction over this claim, it will grant the motion to dismiss it, with leave to amend.

### 9. Unruh Civil Rights Act and Cal. Civ. Code § 51.5

Movants argue that Plaintiffs have not pled intentional discrimination and therefore have not stated a claim under either the Unruh Civil Rights Act or Cal. Civ. Code § 51.5.[8] Plaintiffs respond that Movants are liable for the discriminatory acts of their employees, citing *Williams* and *Beliveau*. In addition, Plaintiffs point out that they have alleged retaliatory acts after they lodged complaints about Sigala's behavior.

*Respondeat superior* does appear to be an applicable liability theory, at least with respect to Plaintiffs' Unruh Civil Rights Act claim. *See Chew v. Hybl*, No. C 96-03459 CW, 1997 WL 33644581, *14 (N.D. Cal. Dec. 9, 1997). As noted above, whether or not Sigala was acting within the course and scope of his employment would appear to be a fact question better left for the summary judgment stage (at which time the parties can also address whether the traditional "scope of employment" analysis applies or whether the analysis should be performed as it apparently is under the FHA). In addition, if – as Movants contend – "courts have held that California Civil Code section 51.5 is an extension of the Unruh Civil Rights Act," Motion at 14:14-16 (citing *Johnson v. Riverside Health Sys., LP*, 534 F.3d 1116, 1126 (9th Cir. 2008)), it stands to reason that the theory would be equally applicable to that claim. *See Scott v. Solano County Healthy*

---

[8] Because Karla is not a proper party at this stage, the Court may not consider any intentional discrimination on the basis of disability.

& *Social Servs. Dep't*, 459 F.Supp.2d 959, 972 (E.D. Cal. 2006) ("An employer may be liable for both negligence and intentional discrimination committed by an employee within the scope of his or her employment under vicarious liability principles."); *Prowd v. Gore*, 57 Cal.App. 458, 461 (1922) (upholding award of damages for employee wrongs in case alleging violation of sections 51 and 52). The Court therefore denies the motion to dismiss as it relates to Plaintiffs' ninth and tenth claims for relief.

Movants also argue that Plaintiffs' thirteenth claim is simply duplicative of their claim based upon the Unruh Civil Rights Act. Plaintiffs, in response, point out that this claim is based on Civil Code section 52.1, not the Unruh Civil Rights Act. *See* FAC ¶ 267. Movants do not address section 52.1 in their Reply. The Court therefore denies the motion to dismiss as it relates to the thirteenth claim.

### 10. Civil Code § 51.9

Movants argue that Plaintiffs' claim based upon Civil Code section 51.9 fails because the only allegations of sexual harassment relate to Sigala and his actions do not fall within the course and scope of his employment. Plaintiffs' response here is the same as their response with respect to their claims under the Unruh Civil Rights Act and Civil Code section 51.5. At the very least, allegations of ratification are sufficient to state a claim under section 51.9 against an employer of the direct wrongdoer. *See C.R. v. Tenet Healthcare Corp.*, 169 Cal.App.4th 1094, 1010-12 (2009). Such allegations are present here. The Court therefore denies the motion with respect to this claim.

### 11. FEHA

Movants argue that Plaintiffs' FEHA claims fail because, as to the disability discrimination basis, Karla is not presently a proper plaintiff and, as to the sex harassment basis, all allegations relate only to Sigala. As to Karla and disability discrimination, those allegations will have to be amended, as addressed above. With respect to the sexual harassment argument, Plaintiffs' response here is the same as their response with respect to their claims under the Unruh Civil Rights Act and Civil Code section 51.5.

*Respondeat superior* is plainly applicable in the FEHA context. *See, e.g., Fisher v. San Pedro Peninsula Hosp.*, 214 Cal.App.3d 590, 608 & n.6 (1989); *Llanos v. Estate*

*of Coehlo*, 24 F.Supp.2d 1052, 1061 (E.D. Cal. 1998). Moreover, the term "owner" in Government Code section 12955(a) is to be construed broadly. *See* Cal. Govt. Code § 12955(a) ("It shall be unlawful...[f]or the owner of any housing accommodation to discriminate against or harass any person because of the...sex...of that person."); Cal. Govt. Code § 12927(e) ("'Owner' includes the lessee, sublessee, assignee, managing agent, real estate broker or salesperson, or any person having any legal or equitable right of ownership or possession or the right to rent or lease housing accommodations...."); Cal. Govt. Code § 12993(a) ("The provisions of this part shall be construed liberally for the accomplishment of the purposes of this part."); *Brown v. Smith*, 55 Cal.App.4th 767, 780-81 (1997) ("FEHA in the housing area is thus intended to conform to the general requirements of federal law in the area and may provide greater protection against discrimination."); *Chew*, 1997 WL 33644581, at *15-16; *see also generally* 8 Witkin, <u>Summary of California Law, Constitutional Law</u> §§ 945-947, at 466-72. As noted above, whether or not Sigala was acting within the course and scope of his employment would appear to be a fact question better left for the summary judgment stage (at which time the parties can also address whether the traditional "scope of employment" analysis applies or whether the analysis should be performed as it apparently is under the FHA). The Court therefore declines to dismiss Plaintiffs' FEHA discrimination claim to the extent it is based on harassment.

           12. <u>Unfair Business Practices</u>

        Movants appear to make several arguments in connection with Plaintiffs' unfair business practices claim. First, they argue that Plaintiffs have not shown that they lost money or property. Second, they noted that a claim for unfair business practices can only lead to the recovery of restitution or injunctive relief, not damages. Third, they argue that a section 17200 claim must allege endangerment of the public as a whole. Finally, they argue that Plaintiffs have not stated the facts in support of their unfair business practices claim with reasonable particularity. Plaintiffs assert that they have alleged damage to themselves, that there is no requirement that the conduct endangers the public as a whole, that unfair business practices are not limited to misleading advertising claims, and that they (and other non-party residents of the Property) are members of the general public.

The requirement that Plaintiffs state their unfair business practices claim with particularity is a state procedural requirement.[9] *But see, e.g., Qarbon.com Inc. v. eHelp Corp.*, 315 F.Supp.2d 1046, 1051-53 (N.D. Cal. 2004). Even if that pleading standard is applicable here, however, Plaintiffs' unfair business practices claim seeks relief that is not available to them, such as compensatory and punitive damages, *see* FAC ¶ 317, and Plaintiffs have not alleged that they lost money or property, *see Harper v. 24 Hour Fitness, Inc.*, 167 Cal.App.4th 966, 975 (2008) and *Hall v. Time Inc.*, 158 Cal.App.4th 847, 849 (2008). As such, the Court should grant the motion as to this claim, with leave to amend.

### 13. Intentional Infliction of Emotional Distress

Movants argue that Plaintiffs have not pled specific facts of severe and emotional distress or alleged what conduct they committed that caused the distress. As to the former argument, Plaintiffs have alleged such distress, and they need not do so with specificity in federal court. *See* FAC ¶¶ 324-25. As to Movants' latter argument, they apparently overlook the allegations in the FAC of retaliation for complaining about Sigala's actions. The Court denies the motion as to this claim.

### 14. Negligent Infliction of Emotional Distress

Movants argue that negligent infliction of emotional distress is not a viable cause of action under California law. *See Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 984 (1993). Plaintiffs respond that the tort is simply a species of the negligence tort. In Reply, Movants agree, but argue that Plaintiffs have not pled the existence of a "duty not to inflict emotional distress" in other than a legally conclusory fashion. *See* FAC ¶ 328.

"[U]nless the defendant has assumed a duty to plaintiff in which the emotional condition of the plaintiff is an object, recovery [for negligent infliction of emotional distress] is available only if the emotional distress arises out of the defendant's breach of some other legal duty and the emotional distress is proximately caused by that breach of duty." *Potter*, 6 Cal.4th at 985. "Even then, with rare exceptions, a breach of the duty

---

[9] Though Plaintiffs mention fraudulent activity in this claim, *see* FAC ¶ 311, it is clear from the remainder of Plaintiffs' action that this claim is not "grounded in fraud." It is therefore not subject to Rule 9(b)'s specificity standard. *See Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1103-04 (9th Cir. 2003).

must threaten physical injury, not simply damage to property or financial interests." *Id.* Here, although Movants were Plaintiffs' landlords/property managers, Plaintiffs have not alleged what other legal duty Movants breached and how that breach, if any, caused their emotional distress, though she conceivably might do so under *Stoiber v. Honeychuck*, 101 Cal.App.3d 903, 922-23 (1980).[10] *But see Gonzales v. Personal Storage, Inc.*, 56 Cal.App.4th 464, 474-75 (1997). Absent an appropriate duty, Plaintiffs cannot have alleged a breach. The Court grants the motion with leave to amend as to this claim.

C. Rule 12(f)

Finally, Movants ask the Court to strike certain material from the FAC. Under Rule 12(f), a party may move to strike any "redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). A Rule 12(f) motion may be used to strike particular categories of relief where they are not recoverable as a matter of law. *See Wilkerson v. Butler*, 229 F.R.D. 166, 172 (E.D. Cal. 2005); *see also* Schwarzer & Tashima (2007) § 9:389, at 9-111.

Movants move to strike the explicit details of Sigala's alleged behavior because they believe those details prejudice them. It is hard to understand how that could be true where it is unlikely, if not virtually impossible, that Plaintiffs' allegations alone will ever make their way before the jury.

With respect to Movants' request to strike the request for punitive damages in the FAC, there are sufficient allegations that a jury might believe such relief is warranted under Civil Code section 3294. As such, the Court will deny this request to the extent that it seeks to bar punitive damages from the FAC as a whole. However, Movants correctly note that Plaintiffs request punitive damages with respect to each individual claim in the FAC other than the claim for injunctive relief (which, incidentally, is not a separate claim for relief under California law), and specify the amount requested by way of punitive damages. If Movants believe that the request for punitive damages in particular claims for relief is inappropriate or impermissible or if they can provide authority disallowing the request of a specific amount of punitive damages in federal

---

[10] *Stoiber*, it should be noted, pre-dated *Potter*.

pleading practice[11] (propositions they have not supported by reference to authority at the present time), the Court will not foreclose them from doing so by way of some future motion.

### III. Conclusion

The Court will deny Movants' Rule 12(e) motion, except to the extent that Plaintiffs seek to recover for any violations of state landlord-tenant laws in their seventh cause of action other than the sections of the Civil Code mentioned in paragraph 153 of the FAC. The Court will deny Movants' motion to strike without prejudice to re-filing that motion as directed against the punitive damages request for individual causes of action and/or the request for specific amounts of punitive damages. The Court will grant Movants' motion with leave to amend as it relates to their arguments targeted at standing and Karla's capacity to sue. The Court will decide Movants' motion as it relates to supplemental jurisdiction at the hearing. If the Court decides to accept supplemental jurisdiction entirely, the Court will grant the motion to dismiss, with leave to amend, as to claims four, five, six, sixteen and eighteen. The Court will otherwise deny the Rule 12(b)(6) motion as to the other claims, except as qualified above with respect to the issues related to standing and Karla's capacity to sue.

---

[11] *See* Schwarzer & Tashima (2008) § 8:156, at 8-73.